Our fourth case of the day is United States v. Williams. Mr. Jensen for the appellant. Good morning to the court, good morning opposing counsel. My name is Jeffrey Jensen and I represent Jaboree Williams on this appeal. Mr. Williams was accused of numerous things, but pertinent to this appeal is he was accused of sex trafficking three different women. And as the government points out in its brief, there was literally a mountain of evidence that Mr. Williams was in fact involved in prostituting with these women. But what converts this from a garden variety prostitution case to a serious federal crime is the fact that allegedly fraud and or coercion was used. I think recognizing that, the government in April of last year filed a notice of an expert witness. The expert witness was an FBI agent, Amy Menzel, who has got extensive experience investigating and prosecuting sex trafficking and human trafficking cases. And I hesitate to make categorical statements because it invites the court to prove me wrong, but I will anyway. The government's notice of expert witness under Rule 16 is completely insufficient or deficient. And the reason is it gave a litany of topics that Agent Menzel would address, but didn't tell us at all what her testimony would actually be. It's the very sort of notice that the court found insufficient in Duvall. Counsel, let's assume that we agree with you on that. Talk about the prejudice. That was actually my next line is. Beach it to it. I understand that the monumental obstacle that Mr. Williams needs to assail in this appeal is to address the issue that that error, if it was error, was not prejudicial. And talking specifically about the insufficient notice of expert testimony, there are two sorts of prejudice that he suffered because of that. The first one is not knowing what Agent Menzel's testimony actually is going to be. It was impossible for me. I was also his trial lawyer. It was impossible for me to articulate a specific objection that I had to the testimony because I didn't know what it was going to be. And it also hindered the district judge in ruling on my objection because at the time the judge ruled on my objection, he also hadn't heard Agent Menzel's testimony. So it was in the abstract. The judge said, well, you know, this is a sex trafficking case and the ins and the outs and the what-have-yous of sex trafficking is not something that the average person knows about. So it seems to me that Agent Menzel's testimony might be helpful for the jury. And I agree with that as far as it goes. But to decide this case, the jury didn't need to know the ins and the outs and the what-have-yous of sex trafficking because the important issue that the jury needed to decide was whether there was fraud and whether there was coercion or coercion. And these are concepts that everybody understands. We deal with fraud and coercion every day. So the outcome of the trial, so you're talking about there's preparation prejudice, which you're saying you suffered, but then there's also the prejudice that the outcome would have been different, right? Well, I haven't even gotten to the preparation prejudice yet. But assuming that I had been made aware of what Agent Menzel's testimony was and assuming I could articulate a cogent objection to it and that the district judge was aware of what the objection was and what the statement was, that testimony would not have been submitted to the jury, which brings me to the second issue I raised in the brief, which whether substantively it was appropriate for Agent Menzel to testify. Before you get to that, I have two questions. One is, did this expert sit through the trial? Was she in the courtroom during the testimony that preceded her testimony? I have to say I don't recall exactly. There were a lot of agents coming in and out of the court during the court. Was she sequestered or was she excluded in any way? I have to just honestly say I don't remember. Okay. Second question then is, she's testified before in many cases, correct? I think she testified. Her testimony during this trial was that she had testified on two earlier occasions. Were you able to see her testimony or read her testimony in those cases? I did not get those cases. You didn't know what they were? I didn't know what they were. So no, I didn't see what her testimony was. Going back to the prejudice of the deficient notice, it also impaired my ability to prepare for trial in terms of not knowing what she was going to say. I couldn't prepare a cross-examination. I literally had to find out what she was going to say and then attempt to cross-examine her basically on the fly. I did the best I could and the point of the cross-examination had to do with she admitted that she was basically rooting for the government and that the testimony she was giving was sometimes defrauded and coerced these women into working for him, but that was the best I could do. Which brings me to the second issue, which is substantively whether this testimony was helpful to the jury. I touched on it a minute ago that the jury doesn't need or didn't need to know the ins and the outs of sex trafficking in order to decide this case. This was something, the issues that Agent Menzel talked about are issues that we all are intimately familiar with from our daily lives, fraud and coercion. She talked about the pimp will offer houses and restaurants and cars and things of that nature and then not follow through with it. Well that's a matter of common knowledge. Agent Menzel testified that the pimps will use violence and a culture of violence in order to coerce the women into doing what he wants. Again, we're all familiar that if you beat somebody up, that has a coercive effect. This was all things that are matters of common knowledge, so it was not necessary for the government to present it. So how is it prejudicial? You're basically saying she just told the jury what they already knew. Here's how it was prejudicial. It's prejudicial because it is, in effect, argument. The witness took every item of evidence that the government intended to present and said, and ladies and gentlemen of the jury, that's classic behavior of human traffickers. It reached the point of being absurd, in my opinion. This is your 404 argument? Pardon me? This is your 404 argument? I'm going to get in again today. Still addressing the prejudice, though, where it reached the point of being absurd. I'm sure the agent knew that the government had a picture of Jabari Williams wearing a Milwaukee Brewer's hat. And she said, and pimps and human traffickers wear Milwaukee Brewer's hats because the MB stands for money over bitches. That, to me, Judge, is argument. And the second reason it's prejudicial is because it is group character trait. I mean, which I admit that Rule 404 doesn't specifically say anything about group character traits. You're into your rebuttal time. I just wanted to flag for you. Yes. So I'll quickly say, but where you say a duck has a flat bill, a duck has water that rolls off its back, and it has feathers and webbed feet, that's the same thing that this expert witness did in this case. Here's what a human trafficker looks like. He makes promises he doesn't keep. He coerces his women. He wears Milwaukee Brewer's hat. And lo and behold, the government presented testimony that that's what Mr. Williams looked like. So that's why I think it's prejudicial. Ms. Kaczorski? May it please the Court. Laura Kaczorski for the United States. The United States' expert witness disclosure in this case adequately summarized the testimony of FBI Special Agent Amy Menzel. In that disclosure, despite what defense counsel said, it identified that she had testified previously in two federal sex trafficking trials. And the United States provided the citations to those cases. Because Special Agent Menzel was not testifying to an ultimate conclusion or opinion in this case, no ultimate opinion or conclusion was required to be disclosed. It was clear from the expert disclosure that what Special Agent Menzel was going to testify about was background educational expert testimony, providing an overview of sex trafficking, the human sex trade, the dynamic between pimps and prostitutes, and its attendant terminology. And this Court, as well as other federal courts, have uniformly held that in these types of cases, educational expert testimony regarding the background of sex trafficking and the dynamics of pimps and prostitutes is appropriate. And this is so because, by and large, this information is not well known. It's not common knowledge. Let's go back to Rule 16 for a minute. Rule 16 says that the government is required to give a written summary of the testimony, not a list of the topics. So just to take one of your topics here. And you admit, basically, on page 26 of the red brief, that that's what you gave him, a list of topics, right? And one of those topics is unique aspects and dynamics of many of the pimp-prostitute relationships. You don't say what they are. You just say that's the topic that she's going to testify about. How does that comply with Rule 16? Your Honor, in this case, I would say it adequately summarized her general testimony. And although Rule 16 doesn't specifically address the differences between educational or background testimony, as opposed to scientific or complicated expert testimony that reaches an ultimate conclusion or opinion in the case, the advisory committee notes to Rule 16 explicitly address a case such as this. And it explains that there's going to be a difference between an expert disclosure, where the expert will be providing only background information on a particular issue, or an expert who will actually offer an opinion. And it states that the expert notice will reflect such a distinction. And in this case, the defense has not explained how an additional sentence added to the disclosure, for example, stating there are two types of pimps, a finesse pimp or a Romeo pimp, as opposed to a gorilla pimp. How that additional granular detail would have somehow affected his preparation, both pre-trial or at trial. And defense counsel challenged special agent Mentzel's expert testimony on various and numerous grounds pre-trial. He didn't write to the court in his motion and say, I'm completely caught off guard, Your Honor, I need a hearing immediately, I need an adjournment, I need a continuance, I need additional information from the government in order to adequately move to exclude it. But the judge says we're going to put that off until trial. So then when they introduce her at trial, that's his first opportunity to really argue to the judge with the witness there, that she should be excluded. At that point, she's already on the stand. How do you defend the fact that he didn't conduct some sort of voir dire of this witness pre-trial so that he could make the decision then, and at least counsel would have a preview of the witness's testimony and be able to prepare his own cross-examination and perhaps even consider calling his own expert witness? Your Honor, in this case, the defense filed the motion excluding the expert testimony on various different grounds. He challenged the sufficiency of the notice, and at that time, he also challenged her testimony, stating that it was not based upon statistical evidence, was not subject to peer review, was not relevant. I mean, he challenged her expert testimony in various ways. At the final pre-trial conference, the judge made the decision that he would not be ruling on the motion until the commencement of trial. And at that time, the defense counsel had not even filed a reply brief. He had not even responded to the United States' response brief, alerting the judge that this was somehow hampering, completely hampering his ability to adequately challenge her testimony both pre-trial and at trial. And again, on the morning of Special Agent Mentzel's testimony, if you look in the trial transcript, the judge specifically asked defense counsel, would you like an opportunity to engage in voir dire of this witness? He declines to do so. He did not make the arguments that he needed a continuance or some type of adjournment in order to obtain additional information before proceeding. The judge, again, while we entered into arguments that morning about whether her testimony should be excluded, he did not present additional authority when asked by the judge. He relied upon what was in his brief and said it was a discovery violation. And then he stated his 404 impermissible character evidence argument. He didn't rely on other arguments and he certainly didn't ask for any other relief that could have been granted. And the judge, bearing that in mind and reading the case law that I cited, that this type of testimony is, frankly, uniformly admitted in these types of cases, agreed to allow Special Agent Mentzel to testify. If this was something that did come in and maybe was a mistake or error, what's your argument for harmless error? Well, Your Honor, Special Agent Mentzel's testimony, while it was helpful to the jury in terms of understanding an area, a subculture, a, frankly, very dark subculture that most jurors would not have any information about, while it was helpful in essentially translating the victim's testimony, the witness's testimony for the jury and translating, in certain respects, Mr. Williams' own words in his Facebook messages, the evidence in this case was overwhelming. The jury saw and heard about Mr. Williams' sex trafficking operation from numerous witnesses, including the victims themselves. The jury saw and heard about Mr. Williams' brutal, demoralizing, humiliating beatings of these women. So, at the end of the day, the evidence was overwhelming. In Special Agent Mentzel's testimony, she testified that she did not know the facts of this case. Did she sit through the trial? She did not. She was sequestered, Your Honor, and she was cross-examined about her prior knowledge of the facts of this case extensively. And she testified that she did not participate in this investigation. She did not know Mr. Williams personally. And she was testifying based upon her training and experience in investigating other sex trafficking trials. And at trial, Mr. Jensen cross-examined her thoroughly. He cross-examined her about her expertise. He cross-examined her about her motivations. As he noted, he got her to admit on cross-examination that she was rooting for the government in this case because she was an FBI agent. And that's something that he argued in his closing argument as well. And so this idea that because the notice could have included an extra sentence explaining in granular detail what she was going to testify about, while at the same time he's arguing this is all common knowledge, everybody knew what it was, the defense can't have it both ways. And at the end of the day, Your Honor, any error was harmless. Thank you, Your Honors. Thank you, Counsel. Mr. Jensen, you have just a little bit of time left for rebuttal. Well, I want to address the government's argument that this, of course, as it seems like it always is, was the defense lawyer's fault for not jumping up on the table and pounding his shoe and demanding relief. I mean, the way this happened was they filed the notice, the Rule 16 notice, I believe it was only three days later, I filed a response to that notice saying it's insufficient, doesn't tell me what the testimony is. And then the government did respond to that, but what they didn't do is firm up the notice and tell me what Agent Menzel's testimony was going to be. I brought it up to the judge at the final pretrial conference. I brought it up at the start of the trial and was put off. I brought it up at the start of Agent Menzel's testimony and was put off. I brought it up several times during... Your one more time, Counsel, can you wrap up? Yes, during her testimony, and only when the judge got sick and tired of hearing from me did he finally conduct this hearing. So I don't think it was my fault. Thank you, Counsel. The case is taken under advisement.